IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

KENNETH S. CHAFFIN and TIFFANY CHAFFIN,

    Plaintiffs,

v.                                                No. Civ. 18-519 JCH/JHR

BHP BILLITON (f.k.a. BROKEN HILLS
PROPRIETARY COMPANY LIMITED and
a.k.a. BHP BILLITON LIMITED or BHP
BILLITON GROUP), BILLITON, PLC (a.k.a.
BHP BILLITON, PLC), BHP BILLITON MINE
MANAGEMENT COMPANY, BHP
BILLITON NEW MEXICO COAL, INC.,
RUDI HALGRYN, and RYAN WAGGONER,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

On July 13, 2018, Defendants BHP Billiton Limited and BHP Billiton, PLC (collectively, "Defendants" or "BHP Parent Companies") filed a Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 4). The Court, having considered the motion, pleadings, briefs, evidence, applicable law, and otherwise being fully advised, concludes that Defendants' motion to dismiss should be granted and Defendants BHP Billiton Limited and BHP Billiton, PLC, should be dismissed without prejudice for lack of personal jurisdiction.

    **I.    BACKGROUND**

Since 1994, Plaintiff Kenneth Chaffin worked as an independent contractor and then employee at the Navajo Mine in Fruitland, New Mexico. First Am. Compl. ¶ 13, ECF No. 1-1. On February 24, 2016, Mr. Chaffin signed a written Employment Agreement. *See* Employment Agreement, ECF No. 11-1 at 13 of 13. Mr. Chaffin alleges he was terminated in retaliation for

giving written notice in March 2016 of his need to take leaves of absences regarding the mental/emotional health of his wife, Tiffany Chaffin. *See* First Am. Compl. ¶¶ 15-16, ECF No. 1-1. Plaintiffs assert that on June 3, 2016, Mr. Chaffin's direct supervisor, Maintenance Superintendent Ryan Waggoner, instructed Field Supervisor John Marts to have Mr. Chaffin remove the Out of Service tag from the left-hand overhead crane on the 7920 dragline because Mr. Waggoner said he had verified it was ok to operate. *Id.* ¶ 16(d) & (f). Plaintiffs contend that Defendants terminated him on July 29, 2016, for purportedly violating BHP's Log out – Tag out standards, work management processes, Charter Values, and safety concerns, for the June 3, 2016 incident, but that his termination was pretext for his use of medical leave. *See id.* ¶¶ 15-19.

On March 11, 2018, Plaintiffs filed suit in the First Judicial District Court in the State of New Mexico, and subsequently amended their complaint to assert claims for violating the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; negligent or fraudulent misrepresentation; common-law wrongful discharge; intentional infliction of emotional distress; interference with contract and prospective economic advantage; and punitive damages. *See* Compl. & First Am. Compl., ECF No. 1-1. The claims all stem from the termination of Mr. Chaffin's employment. *See id.* Plaintiffs sued members of what they term the "BHP Group," a collective reference to BHP Billiton, LLC ("BHP"); BHP Billiton, PLC ("BHP PLC"); BHP Billiton Mine Management Company ("MMCo"); BHP New Mexico Coal Company, Inc. ("NMC"), *see* First Am. Compl. ¶¶ 3-4, ECF No. 1-1, as well as Rudi Halgryn, an alleged managerial agent of BHP, and Ryan Waggoner, *see id.* ¶ 9.

BHP is incorporated in Australia, headquartered in and doing business in Australia, while BHP PLC is incorporated in the United Kingdom, headquartered in and doing business in the United Kingdom. *See* Decl. of Jennifer Lopez ¶ 3, ECF No. 4-1; Decl. of Shawn Goeckner ¶ 3,

ECF No. 4-2. Although they operate as a single economic entity, they are separate legal entities with separate share listings and share registers. Lopez Decl. ¶ 3, ECF No. 4-1. Neither BHP nor BHP PLC had any involvement in any personnel or employment decision concerning Mr. Chaffin. *Id.* ¶ 7. BHP was the indirect owner of MMCo, and at all times indirectly owned all shares of stock in MMCo, which did business only in New Mexico operating the Navajo Mine from January 1, 2014 through December 31, 2016. Goeckner Decl. ¶ 4, ECF No. 4-2. BHP also was and is the indirect owner of all shares of stock in NMC, which was and is registered with the New Mexico Secretary of State and did business in New Mexico. *Id.* ¶ 5. NMC at all relevant times directly owned all shares of stock in MMCo, but effective January 1, 2017, NMC sold all shares of MMCo to Navajo Transitional Energy Company. *Id.* ¶ 6. Neither BHP nor BHP PLC was or is registered to do business in New Mexico, and neither did or does business in New Mexico. *Id.* ¶ 8.

The written Employment Agreement signed by Mr. Chaffin contains a section entitled "Commencement of Employment & Employer" stating:

> Your employer is BHP Billiton Mine Management Company (BHPB MMCo). Generally, a reference to "Company" refers to your employer.
>
> BHP Billiton is the ultimate parent Company of BHPB MMCo. Employment for all three Companies is administered by a single company, which is currently BHP Billiton New Mexico Coal, Inc.

Employment Agreement ¶ 2, ECF No. 11-1. The Employment Agreement explained, "You are employed in a global resources company. Accordingly, you may be required to travel to other locations including to another city or overseas in the course of your work." *Id.* ¶ 4.

The Employment Agreement contained a "Termination by the Company" section, which provided: "The Company may terminate your employment at any time, for any reason or no reason, by giving you the period of written notice shown in Schedule 1 or payment in lieu of some or all of the notice." *Id.* ¶ 20. The Employment Agreement further stated: "The Company may

immediately terminate your employment" when certain conditions were met. *Id.* According to the "Definitions" section, "Company means the employing company specified in Schedule 1." *Id.* ¶ 30. Schedule 1 in turn provided under Item "Employing Company" the following "Detail":

> Generally, your employer is BHPB MMCo if you perform work only for Navajo Mine.
>
> BHP Billiton is the ultimate parent Company of BHPB MMCo.
>
> The administrator of your employment is:
>
> BHP Billiton New Mexico Coal Inc….

*Id.*, Schedule 1, ECF No. 11-1 at 11 of 13. "Group Company" was defined as "a member of the Group including the Company," and "Group" meant "BHP Billiton Limited, BHP Billiton Plc, their respective controlled entities and any entities jointly controlled by BHP Billiton Limited and BHP Billiton Plc." *Id.* ¶ 30.

Elsewhere, the Employment Agreement stated "Company policies" applied regarding compensation, *see id.* ¶ 11; incentives occurred "at the Company's discretion," *id.* ¶ 12; participation may occur "in a Company sponsored retirement plan," *id.* ¶ 13; reimbursement of expenses was subject to "the Company's policy on expenses," *id.* ¶ 15; the "Company may deduct from any money … due to you from any Group Company any money which you owe to any Group Company," *id.* ¶ 16; "the Company" and "Company Policy" applied regarding holiday and other leave, *id.* ¶ 17; and resignation required notice to "the Company," *id.* ¶ 19. By signing the Employment Agreement, Mr. Chaffin consented to undertake medical testing as required by the Company and any Group Company; to allow monitoring, recording, and surveillance of communications via "the Group's information technology systems"; and to the Company and any Group Company collecting, using, storing, and disclosing personal and health information for any lawful purpose. *See id.* ¶ 7(a)-(c). Mr. Chaffin also agreed to "promote and protect the interests of

4

the Group," *id.* ¶ 8(e); "co-operate with the Group in complying with its obligations on health and safety," *id.* ¶ 8(h); keep Company management informed regarding "the conduct of the business of the Group," *id.* ¶ 8(i); and disclose "to the Company or Group Management any serious misconduct or wrongdoing within the Group," *id.* ¶ 8(j). The Employment Agreement prohibited Mr. Chaffin from investing in securities of a company "similar to or in competition with the Group or any Group Company." *Id.* ¶ 10(a).

Defendants BHP and BHP PLC, the BHP Parent Companies, moved to dismiss for lack of personal jurisdiction, arguing that they had no connection to the events alleged by Plaintiffs and no connection to the state of New Mexico to satisfy New Mexico's Long-Arm Statute and due process. *See* Defs.' Mot. 1, 5-10, ECF No. 4. Plaintiffs contend that this Court may exercise jurisdiction over the BHP Parent Companies because they represented themselves as entering a written contract to be Mr. Chaffin's direct and joint employer. Pls.' Resp. 1, 3, ECF No. 11.

**II.    STANDARD**

The personal jurisdiction requirement flows from the Due Process Clause, protecting an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210-11 (10th Cir. 2000). Federal Rule of Civil Procedure 12(b)(2) allows a party to assert by motion the defense of lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). Where no evidentiary hearing is held, a plaintiff only needs to make a prima facie showing that personal jurisdiction exists. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006). The court may consider all factual pleadings, as well as affidavits and other

evidence, but must resolve all factual disputes in the plaintiff's favor. *See id.* at 1229; *Behagen*, 744 F.2d at 733.

## III. LEGAL ANALYSIS

To determine whether a court may exercise jurisdiction over a defendant in a federal question case, the court must examine (1) whether the federal statute confers jurisdiction by authorizing service of process on the defendant, and (2) whether the exercise of jurisdiction would violate due process. *See Peay*, 205 F.3d at 1209. Defendants contend that the FMLA does not provide for nationwide service of process, and Plaintiffs do not contest that assertion. Consequently, the court must apply the law of the state in which the district court sits. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (holding that where neither federal act provided for nationwide service of process, Federal Rule of Civil Procedure 4(k)(1)(A) commands court to apply law of state in which district court sits).

New Mexico's long-arm statute uses a three-step test to decide if personal jurisdiction exists: (1) the defendant's act must be one enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) there must be sufficient minimum contacts with New Mexico to satisfy due process. *See Tercero v. Roman Catholic Diocese of Norwich*, 2002-NMSC-018, ¶ 8, 132 N.M. 312. The reach of New Mexico's long-arm statute extends personal jurisdiction as far as constitutionally permissible. *Id.* ¶ 6. The constitutional standard requires that a defendant have enough contacts with the state so that asserting jurisdiction over the defendant will not offend traditional notions of fair play and substantial justice. *See id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). The defendant's conduct and connection with the forum state must be such that it would reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In analyzing personal jurisdiction, each defendant's contacts with the state must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984). Corporate ownership alone is insufficient for personal jurisdiction. *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) ("[W]e hold that constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary."). *See also Alto Eldorado P'ship v. Amrep*, 2005-NMCA-131, ¶ 32, 138 N.M. 607 ("As a general rule, the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a nonresident and is not otherwise present or doing business in the forum state.") (quoting *Smith v. Halliburton Co.*, 118 N.M. 179, 182, 897 P.2d 1198, 1201 (Ct. App. 1994)). A corporation will be subject to jurisdiction if the acts of its agents and employees that are made within the course and scope of the agency or employment are enough to justify the exercise of jurisdiction. *See Int'l Shoe*, 326 U.S. at 316-17. Applying the test here, the analysis of whether Defendants transacted business or committed a tortious act in New Mexico merges with the minimum contacts analysis. *See Tercero*, 2002-NMSC-018, ¶ 10.

The minimum contact requirement may be satisfied in two ways – through general or specific jurisdiction. *See Trujillo v. Williams*, 465 F.3d 1210, 1218 & n.7 (10th Cir. 2006). A court may maintain general jurisdiction when the defendant's contacts with the forum state are continuous and systematic. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). A court may exercise specific jurisdiction if a defendant has purposefully directed his activities at the residents of the forum and the lawsuit results from injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Not just

any contact with the resident of a forum will establish minimum contacts with that forum; rather, the court must look at whether there is an act in which the defendant purposefully availed itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of the state's laws. *Trujillo*, 465 F.3d at 1219 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A single act can support jurisdiction, so long as it creates a substantial connection to the forum. *Burger King*, 471 U.S. at 475 n.18.

Plaintiffs argue that the BHP Parent Companies were joint employers in, and a single, integrated enterprise in controlling Mr. Chaffin's employment, its administration, and its termination, and that the causes of action arise from his termination. They cite *Sandoval v. City of Boulder*, 388 F.3d 1312 (10th Cir. 2004), for the joint employer test used in Title VII cases to determine liability of two nominally separate entities who share or co-determine matters governing the essential terms and conditions of employment. *See id.* at 1323. This Court is not convinced that the joint employer test used for liability purposes supplants the test used for personal jurisdiction and will follow the authority that treats the two inquiries separately. *See, e.g., Central States, Southeast and Southwest Areas Pension Fund*, 230 F.3d at 944 ("a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for personal jurisdiction by making these contacts elements of a cause of action, since this would violate due process"); *Alto Eldorado Partnership*, 2005-NMCA-131, ¶ 25 ("An alter ego theory under substantive corporate law principles is not a substitute for minimum contacts."). Regardless of whether the BHP Parent Companies are joint employers of Mr. Chaffin, the proper focus is on the acts of each of the parent companies in the forum state. *See Calder*, 465 U.S. at 790. Evidence relevant to whether parent companies are joint employers may be relevant to and help satisfy the parent company's minimum contacts with the forum. *See Alto Eldorado Partnership*, 2005-NMCA-131, ¶ 26 ("While we might

decline to directly superimpose ill-fitting and questionably relevant principles of substantive corporate liability law onto our constitutional jurisdictional inquiry, the relationship between a parent and its subsidiary may be crucial in evaluating jurisdiction itself.").

Turning to the forum contacts, Plaintiffs cite the Employment Agreement and a Payroll Authorization Agreement Form ("Payroll Form," ECF No. 11-2). The Payroll Form, according to its face, "is to update the bank details for direct deposits," and has "bhpbilliton" at the top of the form, but is signed off as "NMC Payroll Department, BHP Billiton New Mexico Coal." Payroll Form, ECF No. 11-2. The Employment Agreement contains language suggesting that BHP and BHP PLC could, as a member of the "Group Company," authorize or demand certain actions of Mr. Chaffin (e.g., demanding drug and alcohol testing). Moreover, the Agreement suggests that under specific circumstances, Mr. Chaffin's employing company was not exclusively MMCo. *See* Employment Agreement, Schedule 1 ("**Generally**, your employer is BHPB MMCo if you perform work only for Navajo Mine.") (emphasis added), ECF No. 11-1 at 11 of 13.

Nevertheless, an individual's contract with an out-of-state defendant does not, alone, establish sufficient minimum contacts. *TH Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007). "To determine whether a nonresident defendant has purposefully established minimum contacts with the forum state by contracting with another party, we therefore examine 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.* at 1288 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). The Employment Agreement defined Mr. Chaffin's employer generally as MMCo and stated the administrator of his employment was NMC. There are no facts indicating that either BHP or BHP PLC, through any of its employees, officers, or directors, were involved in the negotiations of the contract or exercised any control or authority

over Mr. Chaffin during his employment. Nor is there evidence linking BHP or BHP PLC to any action involving Mr. Chaffin's termination. For example, there is no allegation that an employee or director in BHP or BHP PLC directed Mr. Chaffin's termination or that the entities had overlapping officers and directors with MMCo or NMC to suggest that actions by the subsidiary companies were controlled by the BHP Parent Companies. Other than the language in the Employment Agreement that suggests BHP or BHP PLC *could* exercise some degree of authority over Mr. Chaffin's employment duties, there is no evidence that either parent company ever *did* take any action in New Mexico. Finally, the Payroll Form is not sufficient contact with New Mexico to invoke the protections of New Mexico's laws. *Cf. Central States, Southeast and Southwest Areas Pension Fund*, 230 F.3d at 945-46 (explaining that fax cover page's indication that it was sent by parent company/subsidiary was insufficient to show either that corporate formalities were not substantially observed or that parent company controlled the subsidiary to unusually high degree to justify personal jurisdiction over parent company). Plaintiffs have therefore failed to make a prima-facie showing that either BHP or BHP PLC has minimum contacts with New Mexico such that exercising jurisdiction would not offend traditional notions of fair play and substantial justice.

Nor does the evidence amount to continuous, systematic contact by BHP or BHP PLC to invoke general personal jurisdiction. *Cf. Helicopteros*, 466 U.S. at 416-19 (holding that chief executive officer's one trip to Texas for contract-negotiation session, corporation's accepting checks drawn on Texas bank, and corporation's purchasing goods from Texas were insufficient to create general jurisdiction over foreign corporation). *See also Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780 (2017) (defining paradigm forum

for exercise of general jurisdiction over corporation as one in which corporation is fairly regarded as at home).

**IT IS THEREFORE ORDERED** that Defendant BHP Billiton Limited and BHP Billiton, PLC's Motion to Dismiss for Lack of Personal Jurisdiction (**ECF No. 4**) is **GRANTED**. Defendants BHP Billiton Limited and BHP Billiton, PLC, are **dismissed without prejudice** for lack of personal jurisdiction.

_____
**UNITED STATES DISTRICT JUDGE**