# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

KENNETH S. CHAFFIN and TIFFANY CHAFFIN,

       Plaintiffs,

v.                                          No. Civ. 18-519 JCH/JHR

BHP BILLITON (f.k.a. BROKEN HILLS
PROPRIETARY COMPANY LIMITED and
a.k.a. BHP BILLITON LIMITED or BHP
BILLITON GROUP), BILLITON, PLC (a.k.a.
BHP BILLITON, PLC), BHP BILLITON MINE
MANAGEMENT COMPANY, BHP
BILLITON NEW MEXICO COAL, INC.,
RUDI HALGRYN, and RYAN WAGGONER,

       Defendants.

## MEMORANDUM OPINION AND ORDER

On October 12, 2018, Defendants BHP Billiton Mine Management Company ("BHPB MMCo"), BHP Billiton New Mexico Coal, Inc. ("NMC"), Rudi Halgryn, and Ryan Waggoner (collectively, "Defendants") filed a *Motion to Dismiss for Failure to State a Claim* (ECF No. 14). Defendants seek dismissal of Plaintiffs Kenneth and Tiffany Chaffin's claims for common-law wrongful discharge, intentional infliction of emotional distress, and interference with contract and prospective economic advantage. The Court, having considered the motion, pleadings, briefs, applicable law, and otherwise being fully advised, concludes that Defendants' motion to dismiss should be granted in part and denied in part as described herein.

## I.    FACTUAL BACKGROUND

Since 1994, Plaintiff Kenneth Chaffin worked as an independent contractor and then employee at the Navajo Mine in Fruitland, New Mexico. First Am. Compl. ¶ 13, ECF No. 1-1.

From May 2013 through July 29, 2016, Mr. Chaffin worked as a Field Supervisor for Defendants BHPB MMCo. and NMC. *See id.* ¶¶ 7-8, 14. Mr. Chaffin entered into a written contract with the "BHP Group," Plaintiffs' collective reference to BHP Billiton ("BHP"), BHP Billiton, PLC ("BHP PLC"), BHPB MMCo, and NMC. *See id.* ¶¶ 3-5.

In March 2016, Mr. Chaffin gave Defendants written notice of his need to take leaves of absences regarding the mental/emotional health of his wife, Plaintiff Tiffany Chaffin. *Id.* ¶ 16(b). He asserts he was entitled to make these requests under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-1 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and as amended. *Id.* ¶ 16(c).

From March through July 2016, Mr. Chaffin's direct supervisor, Maintenance Superintendent Ryan Waggoner, began treating Mr. Chaffin as if Defendants now found him unfavorable because of his association with a person having mental/emotional difficulties. *Id.* ¶ 16(d). Mr. Waggoner also acted as if Mr. Chaffin was impaired or disabled, including asking co-workers whether they felt like Mr. Chaffin was still fit for duty. *Id.* ¶ 16(e). Mr. Chaffin "was harassed, belittled, and discriminated and retaliated against by Defendants for incurring, having a record of, or being regarded as having serious injuries and serious medical conditions, and/or for having requested accommodations for the same." *Id.* ¶ 17. Mr. Chaffin made complaints of this treatment within Defendants' corporate structure to no avail. *Id.* ¶ 18.

On June 3, 2016, Mr. Waggoner instructed Field Supervisor John Marts by radio to have Mr. Chaffin remove the Out of Service tag from the left-hand overhead crane on the 7920 drag line. *Id.* ¶ 16(f). Mr. Chaffin was present and within hearing distance of this conversation. *Id.* Mr. Waggoner said he had verified it was ok to operate. *Id.* As Mr. Waggoner and Mr. Marts were

aware, Mr. Chaffin had no independent knowledge of what repairs or inspections had occurred because he had taken periodic leaves of absences. *Id.* Mr. Waggoner removed the tag as instructed. *Id.*

The week of July 5, 2016, Mr. Waggoner began changing and limiting Mr. Chaffin's supervisory responsibilities without explanation. *Id.* ¶ 16(g). On July 18, 2016, Defendants requested more information on Mr. Chaffin's FMLA request. *Id.* ¶ 16(h). On July 25, 2016, Tiffany Chaffin's brother died, and the funeral service was to occur on August 1, 2016. *Id.* ¶ 16(i). Defendants were aware of Mr. Chaffin's brother-in-law's death. *Id.* Mr. Chaffin's need for a leave of absence and Mrs. Chaffin's reliance on the health insurance provided by his employer was immediate and critical. *Id.*

Defendants terminated Mr. Chaffin by letter dated July 29, 2016, for purportedly removing the Out of Service tag from the left-hand overhead crane on the 7920 in violation of BHP's Log out – Tag out standards, work management processes, Charter Values, and safety concerns. *See id.* ¶¶ 15, 16(j). The basis for the termination was false and Mr. Chaffin was subject to disparate treatment as compared to Mr. Waggoner and Mr. Marts from the June 3, 2016 incident. *See id.* ¶ 16(j). The Mine Safety and Health Administration investigated the June 3, 2016 incident and determined that the left-hand overhead crane on the 7920 drag line was, in fact, safe to operate when Mr. Chaffin removed the Out of Service tag at Mr. Waggoner's and Mr. Marts' direction. *Id.* ¶ 16(k).

Around this time, Defendants were negotiating and completing the purchase of the Navajo Mine by a third-party. *See id.* ¶ 16(a). Mr. Chaffin's termination of employment before the closing date of the sale of the mining operations interfered with and prevented him from securing

employment with the successor company that continues to operate the mine. *Id.* ¶ 55. As a result, Plaintiffs lost the benefit of their health insurance coverage. *Id.*

Plaintiffs filed suit in the First Judicial District Court in the State of New Mexico against the BHP Group, Rudi Halgryn, an alleged managerial agent of BHP, and Ryan Waggoner. *See id.* ¶¶ 3-4, 9.[1] Mr. Chaffin asserts claims for violation of the FMLA (Count I), negligent or fraudulent misrepresentation (Count II); and common-law wrongful discharge (Count III). *Id.* ¶¶ 20-47. Both Mr. Chaffin and Mrs. Chaffin set forth claims for intentional infliction of emotional distress (Count IV), interference with contract and prospective economic advantage (Count V), and punitive damages. *Id.* ¶¶ 48-60.

## II.     LEGAL STANDARD

On a motion to dismiss, the court assesses the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). Rule 8 requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all well-pleaded facts, viewing them in the light most favorable to the nonmoving party and allowing all reasonable inferences in favor of the nonmoving party. *Archuleta*, 523 F.3d at 1283. The court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The complaint "does not need detailed factual allegations," but "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.     ANALYSIS

---

[1] In a Memorandum Opinion and Order, this Court dismissed without prejudice Defendants BHP and BHP PLC for lack of personal jurisdiction. Mem. Op. and Order, ECF No. 19.

Defendants move to dismiss for failure to state a claim Plaintiffs' claims for intentional infliction of emotional distress (Count IV), interference with contract and prospective economic advantage, (Count V), and common law wrongful discharge (Count III).[2]

## A. Interference with contract and prospective economic advantage

New Mexico adopted the Restatement (Second) of Torts' description of the tort of interference with prospective contractual relations:

> One who intentionally and improperly interferes with another's prospective contractual relation … is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
>> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>>
>> (b) preventing the other from acquiring or continuing the prospective relation.

*M & M Rental Tools, Inc. v. Milchem, Inc.*, 1980-NMCA-072, ¶ 20, 612 P.2d 241 (quoting Restatement (Second) of Torts § 766B). To establish tortious interference with a contract, the plaintiff must prove that (1) the defendant had knowledge of the contract between the plaintiff and a third party, (2) performance of the contract was refused, (3) the defendant played an active and substantial part in causing the plaintiff to lose the benefits of his contract, (4) damages flowed from the breached contract, and (5) the defendant induced the breach without justification or privilege to do so. *Ettenson v. Burke*, 2001-NMCA-003, ¶ 14, 17 P.3d 440. A defendant acts without

---

[2] Defendants also argued in their reply that their motion to dismiss should be granted because Plaintiffs filed their response over three weeks late without any justification for their untimeliness. Defs.' Reply 1-2, ECF No. 17. Although Local Rule 7.1(b) states that the failure to timely serve a response constitutes consent to grant the motion, *see* D.N.M.LR-Civ. 7.1(b), the Court will not grant the motion because Plaintiffs filed a response opposing the motion on the merits, and dismissal of counts is a severe sanction when no prejudice has been shown. Plaintiffs are hereby warned, however, that future failure to adhere to the local rules could result in more severe sanctions.

justification or privilege when he acts either with an improper motive or by use of improper means. *Id.*

"Parties to a contract cannot bring an action for tortious interference with an existing contract against each other." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 6, 137 P.3d 577 (quotations omitted). Rather, breach of contract is the appropriate cause of action between parties to the same contract. *Id.* (explaining that plaintiff-employee could not have sued her corporate employer for interfering with her employment contract). In the case of interference with prospective contracts and existing terminable at-will contracts, which are equivalent to prospective contracts, the improper motive must be the sole motive. *Fikes v. Furst*, 2003-NMSC-033, ¶ 21, 81 P.3d 545. Greater protection is given to an existing contract, so for a claim of interfering with an existing contract, "the plaintiff must still prove that the defendant acted with either an improper motive or improper means, but the improper motive need not be the sole motive." *Id.* ¶ 22.

In their motion, Defendants contend that Plaintiffs cannot state a claim for tortious interference with contract, because a party to a contract cannot tortiously interfere with his own contract. Plaintiffs respond that Defendants Halgryn and Waggoner were not parties to Mr. Chaffin's employment contract with the BHP Group and that Defendants were not parties to the third-party contracts of health insurance. Plaintiffs assert that it is Defendants' burden to plead and prove the good-faith/corporate-interests qualified privilege in order to avoid liability for Defendants Halgryn and Waggoner's alleged tortious interference with a contract. Plaintiffs also allege that Defendants' termination of Mr. Chaffin interfered with his prospective economic relations with the successor operator of the Navajo Mine.

1. **Defendants Halgryn and Waggoner's alleged tortious interference with Mr. Chaffin's employment contract with the BHP Group**

Proving tortious interference with contract is more complicated in a corporate setting. *See Ettenson*, 2001-NMCA-003, ¶ 15. "A corporate officer *acting outside the scope of authority …* may be liable for interfering with a corporate contract." *Deflon*, 2006-NMSC-025, ¶ 7 (emphasis added). New Mexico has adopted the qualified immunity theory in which "a corporate officer is privileged to interfere with his corporation's contracts only when he acts in good faith and in the best interests of the corporation, as opposed to his own private interests." *Id.* ¶ 8 (quoting *Ettenson*, 2001-NMCA-003, ¶ 17). A corporate officer who interferes with a corporate contract in bad faith and against the best interests of the corporation may be liable for tortious interference with contract. *Id.* ¶ 9. "The idea behind the qualified immunity theory is that an officer acting on behalf of a corporation should have the authority to breach a corporation's contract, leaving the corporation to answer for the authorized breach in a breach of contract action." *Id.* To determine whether a corporate officer's actions fall outside the scope of authority, a court must examine the motivating forces behind the corporate officer inducing his corporation to breach its contractual obligations, in other words, whether the corporate officer acted to satisfy personal feelings or to serve his own private interest with no benefit to the corporation. *Id.* ¶ 10. A supervisor who interferes with his subordinate's employment contract with a discriminatory motive is not acting in the best interests of his employer but is acting for his own interests. *See id.* ¶ 19 (explaining that supervisor who interferes with employment contract of a subordinate for spurning sexual advances is not privileged).

Whether an officer's actions are privileged is an issue of fact. *Ettenson*, 2001-NMCA-003, ¶ 21. The burden is on the defendant "to plead and prove privilege as an affirmative defense." *Id.*

Defendants argue that Halgryn and Waggoner can only be liable for this tort if they acted outside the scope of their authority and Plaintiffs' complaint is devoid of any allegation that either

acted outside the scope of their authority. Defendants point to an allegation in the complaint suggesting the contrary: "Each Defendant was, or acted directly or indirectly in the interest of, Mr. Chaffin's 'employer' within the meaning of 29 U.S.C. § 2611(4)(a)." First Am. Compl. ¶ 22, ECF No. 1-1.[3] Plaintiffs argue, however, that they do not have to plead and prove privilege because it is an affirmative defense.

It is clear that New Mexico has made the good-faith/corporate-interest privilege an affirmative defense. It is less clear, however, whether a plaintiff must plead as an element that the corporate officer/employee was acting outside the scope of his authority to give the defendant notice of the theory of individual liability asserted. The Court need not resolve that matter here because there are other deficiencies in the complaint.

Having examined the First Amendment Complaint, the Court is not convinced that Plaintiffs alleged their theory of liability against Waggoner and Halgryn with sufficient particularity to show a plausible entitlement to relief. With respect to the claim against Halgryn, there are minimal facts directed to what actions he took to interfere with the contract. The only allegation specific to Defendant Halgryn is that he was a managerial agent of BHP. *See* First Am. Compl. ¶ 9, ECF No. 1-1. The First Amended Complaint is lacking in non-conclusory facts showing how Halgryn played an active and substantial part in causing Plaintiffs to lose the benefits of the contract or how he induced the breach without justification or privilege to do so, and thus, is lacking in establishing how Defendant Halgryn may be held individually liable under this tort. *Cf. Bogle v. Summit Investment Co., LLC*, 2005-NMCA-024, ¶¶ 20-21, 107 P.3d 520 (concluding that evidence did not support claim for intentional interference with contract against employee

---

[3] Section 2611(4)(A) of the FMLA defines "employer" to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I).

individually where there was lack of any evidence establishing how employee's motives were separate from corporation).

As for Defendant Waggoner, the complaint alleges more specific facts as to his role in the events, but it does not allege in Count V that he was acting outside the scope of his employment. The other allegations related to Count V are general to "Defendants" and assert other theories underlying the claim – that "Defendants" interfered with Mr. Chaffin's ability to secure employment with the successor operator of the mine and that "Defendants" interfered with Mrs. Chaffin's contract of health insurance. *See* First Am. Compl. ¶¶ 53-59, ECF No. 1-1. Although paragraph 22 relates to the FMLA claim, it is the only paragraph relating to scope of employment and indicates that Halgryn and Waggoner were acting in the interests of the company. Count V incorporated by reference each paragraph of the Complaint as if fully set forth within Count V. *Id.* ¶ 52. From the four corners of the First Amended Complaint, it is not readily apparent that Plaintiffs were asserting a separate theory of individual liability against Halgryn and Waggoner. The complaint did not give Defendants sufficient notice of the theory that Halgryn and Waggoner acted outside the scope of their authority in interfering with the BHP Group's contract with Mr. Chaffin. The Court thus finds that the First Amended Complaint did not adequately state a claim for relief against Halgryn and Waggoner as to the tortious interference with a contract claim based on the employment contract with the BHP Group.

Rule 8 permits a party to state multiple claims, regardless of consistency. Fed. R. Civ. P. 8(d)(3). It is not clear that acting in the interest of an employer under the FMLA is the same as acting outside the scope of employment for purposes of the tort of contractual interference. Given the lack of briefing and authority, the Court will not decide the matter now. It therefore may be possible for Plaintiffs to allege that Waggoner and Halgryn acted outside the scope of their

authority as to Count V, despite their allegation in paragraph 22 that each defendant acted in the interest of Mr. Chaffin's employer as to Count I. The Court will therefore give Plaintiffs an opportunity to amend their complaint to add factual allegations relating to their claim for tortious interference with a contract against Halgryn and Waggoner individually, if Plaintiffs can do so under Rule 11. Should Plaintiffs fail to file an amended complaint within 14 days of the entry of this Memorandum Opinion and Order, the Court will dismiss Count V's theory of liability that Defendants Halgryn and Waggoner are liable for interfering with Mr. Chaffin's written contract of employment with the BHP Group of companies.

### 2. Defendants' alleged interference with contracts of health insurance

In response to Defendants' argument that they cannot be held liable for tortious interference with a contract to which they are a party, Plaintiffs assert that they identified a contract to which Defendants are not a party and with which they interfered – Plaintiffs' contract with their health insurance company. Defendants contend that the health insurance contract is a benefit that was only conferred as a result of the employment contract and that Defendants were therefore not a "stranger" to the contract. Defendants assert that this claim is an attempt to circumvent the well-established rule that terminated employees cannot sue their employers for tortious interference with their employment contracts, but instead for breach of contract.

Defendants cite *Atlanta Market Center Management, Co. v. McLane*, 503 S.E. 2d 278, 282 (Ga. 1998), for the proposition that a plaintiff can only prevail on a tortious interference with contractual relations claim if the defendant is a third party, in other words, a "stranger" to the contract with which the defendant allegedly interfered. The Georgia Supreme Court held that "to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract." *Id.* at 283.

"The 'Stranger Doctrine' has been adopted in various forms in a limited number of jurisdictions, including Georgia, Alabama, and Florida." *BCD, LLC, et al. v. BMW Mfg. Co.*, LLC, C/A No. 6:05-CV-2152-GRA, 2007 WL 128887, *2 (D. South Carolina Jan. 12, 2007) (and cited cases) (explaining that while South Carolina has not adopted Stranger Doctrine, it provides other protection to third parties of a contract from tort of interference with contractual relations). *See also Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 884 (Del. Ch. 2009) ("[T]o state a claim for tortious interference with contract the complaint must contain factual allegations that support a reasonable inference that Lichtenstein, Niedermeyer, and Walton were each 'a stranger to both the contract and the business relationship giving rise to and underpinning the contract.'"). If the Court were to apply this doctrine, Defendants are not strangers to the business relationship underpinning the health insurance contract, and thus, Plaintiffs' cause of action would not survive.

It is not clear, however, whether the New Mexico Supreme Court would adopt the rule. Defendants did not cite a New Mexico case and the Court did not find one addressing this doctrine. The Court need not decide whether New Mexico would follow the Stranger Doctrine because the Court is not convinced that New Mexico would permit a tortious interference claim in this situation.

The factual basis for Plaintiffs' asserted interference with their health insurance contract is the termination of the health insurance benefit/contract that occurred when the BHP Group terminated the employment relationship. *See* First Am. Compl. ¶¶ 54-55, 59, ECF No. 1-1. Plaintiffs have not alleged other actions by Defendants to interfere with the contract. Under the reasonable inferences to be drawn from Plaintiffs' limited facts, the breach of the health insurance contract occurred because the payors (the BHP Group) stopped paying the health insurance company on behalf of Plaintiffs. Although the terms of the health insurance contract are not in the

pleadings, the BHP Group's duty to pay that would cause the breach must flow either from the health insurance contract itself (in which case the employer is a party to the contract) or from an employment agreement with Mr. Chaffin in which the BHP Group agreed to pay on behalf of Mr. Chaffin. This claim thus does not involve an action by Defendants to induce the health insurance company to breach the agreement; rather, the breach occurred allegedly by Defendants' failure to pay on a contract. There are no allegations that Defendants somehow prevented Plaintiffs from paying premiums directly to the health insurer. Plaintiffs therefore have failed to state a claim for tortious interference with their health insurance contract. *Cf. Tok Cha Kim v. CB Richard Ellis Hawaii, Inc.*, 288 F. App'x 312, 315 (9th Cir. 2008) (unpublished opinion) ("Tortious interference with *existing* contractual relations requires a plaintiff to show 'the defendant's intentional inducement of [a] third party to breach the contract.' Kim cannot meet this requirement because it is undisputed that she, not PGC, breached the existing lease by not paying rent after August 2003.") (internal citation omitted).

Furthermore, to allow this claim to stand would upend the ruling of the New Mexico Supreme Court that a plaintiff-employee cannot sue her corporate employer for interfering with her employment contract and allow a plaintiff to state a tortious interference with contract claim any time an employee with health benefits is terminated. The Court does not believe the New Mexico Supreme Court intended for the tort of interference with contractual relations to be applied in the situation here rather than a claim for breach of contract.

### 3. Defendants' alleged interference with Mr. Chaffin's economic relations with the successor operator of the Navajo mine

Plaintiffs' third theory of liability in Count V is that Defendants, collectively, interfered with Mr. Chaffin's prospective employment contract or economic relations with a third party -- the successor operator of the Navajo Mine that is unaffiliated with the BHP Group of entities. In

reply, Defendants contend that Plaintiffs failed to cite any authority in support of this application of tortious interference with Mr. Chaffin's potential future employment opportunities with another entity.

Although Plaintiffs cited no legal authority specific to this situation of a successor mine, Plaintiffs refuted Defendants' argument in their motion that Plaintiffs did not allege Defendants interfered with a prospective economic relationship with a *third* party by explaining that the third party is the successor mine. Defendants in their motion did not make any other arguments regarding failing to meet other elements of this cause of action. Nor did Defendants cite authority that Plaintiffs cannot succeed on a claim like the one alleged. Turning to the complaint, Plaintiffs allege that Defendants interfered with Mr. Chaffin's ability to secure employment with the successor mine, which meets the element that the defendant prevented the plaintiff from acquiring the prospective relation. *See M & M Rental Tools*, 1980-NMCA-072, ¶ 20. Plaintiffs also asserted that Defendants intentionally fired him through improper means by falsely accusing him of violating a safety regulation in order to unlawfully fire him for taking FMLA leave. Defendants have not convinced the Court that Plaintiffs have not stated a claim. Accordingly, the Court will not dismiss Plaintiffs' tort of interference with prospective contractual relations that is based on the theory that Defendants interfered with Plaintiffs' prospective employment with the successor operator of the mine.

As discussed above, however, the complaint does not contain sufficient allegations about Defendant Halgryn's role in Mr. Chaffin's termination. The Court has permitted Plaintiffs leave to amend their complaint to add factual allegations concerning his actions as they relate to this tort. If Plaintiffs do not amend their complaint within 14 days with additional factual allegations

concerning Halgryn's actions, the Court will dismiss Count V against Halgryn with respect to all remaining theories of liability.

## B. Intentional infliction of emotional distress

To prove a claim for intentional infliction of emotional distress, the plaintiff must show that the defendant's conduct was extreme and outrageous under the circumstances; the defendant acted intentionally or recklessly; and as a result of the conduct the plaintiff experienced severe emotional distress. *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 47, 976 P.2d 999. An employer can be held liable for an employee's intentional infliction of emotional distress. *Deflon v. Danka Corp. Inc.*, 1 F.App'x 807, 822 (10th Cir. Jan. 5, 2001) (citing *Coates*, 976 P.2d at 1009). Extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Stieber v. Journal Pub. Co.*, 120 N.M. 270, 274, 901 P.2d 201, 205 (Ct. App. 1995) (citation and quotations omitted); N.M. U.J.I. 13-1628.

The court should determine as a matter of law whether the conduct reasonably could be regarded as so extreme and outrageous to permit recovery. *Trujillo v. Northern Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 26, 41 P.3d 333 (2001). If reasonable minds could differ, the case should be permitted to go to a jury. *Id.* Only in extreme circumstances can the act of firing an employee support an intentional infliction of emotional distress claim. *Id.* ¶ 27. The "severe" emotional distress required to recover under the intentional infliction of emotional distress tort means that a reasonable person would be "unable to cope adequately with the mental distress engendered by the circumstances" and no reasonable person could be expected to endure it. *Id.* ¶ 28 (quotations omitted).

Plaintiffs allege that Defendants' "conduct in setting up and completing the termination of Mr. Chaffin's employment was extreme and outrageous under the circumstances, including but not limited to the timing to coincide with the death of Mrs. Chaffin's brother," First. Am. Compl. ¶ 49, and that as a result they "experienced severe emotional distress," *id.* ¶ 51. Defendants argue that the evidence does not establish that their alleged conduct was extreme or outrageous. Defendants contend that termination from a job is not enough to state a claim.

"[M]any courts have found abusive conduct not to be extreme and outrageous in employment situations where the employer had a legitimate purpose." *Graham v. Commonwealth Edison Co.*, 318 Ill.App.3d 736, 746, 742 N.E.2d 858 (Ill. App. Ct. 2000) (and cited cases). Courts, however, have allowed a claim for intentional infliction of emotional distress in the employment context when the employer uses its power to coerce a plaintiff into doing something he would not otherwise do and to retaliate against the plaintiff. *Id.* at 747 (and cited cases). Moreover, the Restatement of Torts acknowledges that the "extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity," so long as "major outrage" is present as well. Restatement (Second) of Torts § 46 cmt. f.

In this case, the termination alone would not satisfy the element of extreme and outrageous behavior, but the Court must accept Plaintiffs' allegations as true at this stage. Plaintiffs allege that Defendants wanted to fire and retaliate against Mr. Chaffin for using FMLA leave, and that they intentionally set him up to violate a safety regulation in order to provide the pretextual grounds to do so. Plaintiffs also assert that Defendants knew Mr. Chaffin took leave because of mental health reasons for his wife and that they timed the firing to coincide with the death of his wife's brother. These allegations amount to more than workplace unpleasantness and fall more into the line of

coercion and retaliation cases courts have found to state a claim. While a close call, the Court concludes that reasonable minds could differ on whether the alleged conduct was sufficiently extreme to go beyond all bounds of common decency and will permit the intentional infliction of emotional distress claim to proceed to discovery. *Compare Graham*, 318 Ill.App.3d at 748 ("We find Graham's allegations of a sham investigation for the sole purpose of retaliating against him because he reported that ComEd was violating nuclear safety regulations are sufficient to constitute extreme and outrageous behavior."); *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306-07 (5th Cir. 1989) (holding under Texas law that where plaintiff proved supervisor intentionally placed employer's check in plaintiff's purse to make it appear she was a thief or put her in fear of criminal charges took case beyond realm of ordinary employment dispute and into realm of outrageous one); *Osuagwu v. Gila Regional Medical Center*, 938 F.Supp.2d 1180, 1196 (D.N.M. 2013) (holding that plaintiff's intentional infliction of emotional distress claim against defendant who hired him could proceed to jury where there was evidence that defendant did not afford plaintiff fair disciplinary procedures that could permanently affect plaintiff's medical career where defendant, among other things, took over prosecution of case and served as witness and misrepresented facts and omitted critical facts in plaintiff's favor, as well as included clearly false statements in his reports to National Medical Database and New Mexico Medical Board); *with Trujillo*, 2002-NMSC-004, ¶ 27 (concluding that termination of employee who had been cleared to work part-time after medical testing did not support claim for intentional infliction of emotional distress because employee was fired when employer found his work was no longer satisfactory).

### C. Common law wrongful discharge

New Mexico recognizes a limited exception to the employment at-will rule in which a discharged at-will employee may recover in tort "when his discharge contravenes a clear mandate

of public policy." *Chavez v. Manville Products Corp.*, 108 N.M. 643, 647, 777 P.2d 371, 375 (1989). To prevail on a retaliatory discharge claim, an employee must show that he was fired "because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn." *Chavez*, 108 N.M. at 647, 777 P.2d at 375 (quoting *Vigil v. Arzola*, 102 N.M. 682, 689, 699 P.2d 613, 620 (N.M. Ct. App. 1983)). The employee additionally must demonstrate that the employer knew or suspected that the employee's action involved a protected activity, *Weidler v. Big J Enterprises, Inc.*, 1998-NMCA-021, ¶ 23, 953 P.2d 1089 (1997), and that there was a causal connection between his actions and the retaliatory discharge by the employer, *Shovelin v. Central New Mexico Elec. Coop., Inc.*, 115 N.M. 293, 303, 850 P.2d 996, 1006 (1993).

The linchpin of the retaliatory discharge tort "is whether by discharging the complaining employee the employer violated a 'clear mandate of public policy.'" *Shovelin*, 115 N.M. at 303, 850 P.2d at 1006 (quoting *Vigil*, 102 N.M. at 688, 699 P.2d at 619). "A clear mandate of public policy sufficient to support a claim of retaliatory discharge may be gleaned from the enactments of the legislature and the decisions of the courts" and may fall into one of the following categories: (i) legislation defining public policy and providing a remedy for violation of that policy; (ii) legislation providing protection of an employee without specifying a remedy; (iii) legislation defining a public policy without specifying either a right or remedy, requiring judicial recognition of both; and (iv) instances where there is no expression of public policy and the judiciary would have to imply a right and remedy. *Id.* As for laws defining public policy and proving a remedy, the New Mexico Supreme Court cited the New Mexico Human Rights Act as an example. *Id.* Not every expression of public policy, even if set forth in a statute, will suffice to state a claim for

retaliatory discharge. *Id.* The employee must identify a specific expression of public policy in order to state a claim. *See id.* at 303-04, 850 P.2d at 1006-07.

Defendants argue, relying on *Salazar v. Furr's Inc.*, 629 F.Supp. 1403, 1408-09 (D.N.M. 1986), that where a remedy in tort is available to redress the firing, in this case the FMLA, common law wrongful discharge is repetitive and not available. In *Salazar*, the court stated: "Where a remedy other than [the wrongful discharge] tort is available to Plaintiff to redress the discharge, the policy which underlies New Mexico's recognition of the tort, that of softening the terminable at will rule, does not favor recognizing a cause of action." *Id.* at 1408. The district court concluded that "New Mexico courts would not extend the tort of wrongful discharge to a situation which fits so neatly into the Title VII mold." *Id.* at 1409. Although the court noted somewhat contrary dicta in the New Mexico Court of Appeals *Vigil* case indicating that legislation that defines policy and provides a remedy is one of the categories of identifiable public policy, the *Salazar* court refused to rely on the *Vigil* dicta because of *Vigil*'s limitation of the scope of the tort and cases holding that the tort is unavailable to union contract employees. *See id.*

Other federal district courts have followed similar reasoning and precluded wrongful discharge claims when a plaintiff may seek redress for the wrong under a separate statute like the FMLA. *See, e.g., Depaula v. Easter Seals, El Mirador*, No. 1:14-cv-00242-MCA-SCY, 2016 WL 6681182, *9 (D.N.M. Mar. 31, 2016). At least one other federal district court, however, has disagreed with this interpretation of New Mexico law and refused to dismiss a plaintiff's wrongful discharge claim where the plaintiff alleged the defendant fired him because of his attempts to assert his rights under the FMLA. *Cordova v. New Mexico*, 283 F.Supp.3d 1028, 1046-48 (D.N.M. 2017) (J. Parker). None of these district court decisions is binding on this Court. The Court, however,

agrees that the following reasoning of the *Cordova* decision accurately reflects the meaning of the pertinent New Mexico Supreme Court precedent:

> In *Shovelin v. Central N.M. Elec. Coop.*, 1993-NMSC-015, ¶ 25, 115 N.M. 293, 850 P.2d 996, the New Mexico Supreme Court cited *Vigil* when it described one of the categories of "clear mandate[s] of public policy sufficient to support a claim of retaliatory discharge" as "legislation [that] define[s] public policy and provide[s] a remedy for a violation of that policy." The New Mexico Supreme Court later specifically rejected the "argument that the tort of retaliatory discharge cannot be founded on a declaration of public policy embodied in a legislative enactment that provides its own remedial scheme." *Gandy v. Wal–Mart Stores, Inc.*, 1994-NMSC-040, ¶¶ 10–12, 117 N.M. 441, 872 P.2d 859. While it agreed that the plaintiff could not recover twice for the same harm, it noted that a tort claim might provide different remedies than those available under the statutory scheme and that the argument for preclusion contradicted both *Vigil* and *Shovelin*. *Id.* ¶¶ 8, 10. It explained that judicial procedures could prevent a double recovery and held that a violation of the New Mexico Human Rights Act (NMHRA) supports a claim for discharge in violation of public policy despite the statutory remedy. *Id.* ¶ 12. In *Michaels v. Anglo American Auto Auctions, Inc.*, 1994-NMSC-015, ¶¶ 15–17, 117 N.M. 91, 869 P.2d 279, the Court similarly allowed a retaliatory discharge claim to be based on violation of the Worker's Compensation Act.

*Cordova*, 283 F.Supp.3d at 1047-48.

Mr. Chaffin argues that he has pled that his termination violated the protections of the NMHRA, ADA, and FMLA, and that none of these acts provide exclusive remedies. Accordingly, he contends that he has stated a claim for wrongful discharge based on violations of public policies set forth in those statutes. Defendants agree that the statutes contain non-exclusivity provisions, but they assert that the wrongful discharge tort does not permit recovery when other remedies exist. Defendants also contend that the only public policy set forth in Count III is Mr. Chaffin's request for FMLA, so a claim relying on another public policy mandate must be dismissed.

Based on *Shovelin* and *Gandy*, the Court agrees that Mr. Chaffin can state a claim for the tort of wrongful discharge based on his termination for requesting FMLA leave. *Cf. Gandy*, 872 P.2d at 859 (holding that plaintiff may bring common-law tort action for retaliatory discharge when she alleges she was discharged from her employment because she earlier sought relief against

her employer under the NMHRA). As for the NMHRA and ADA, Mr. Chaffin's complaint insufficiently provided Defendants with notice that he was asserting a wrongful discharge claim based on public policies set forth in those statutes. The Court, however, will permit him leave to amend his complaint within 14 days of entry of the Memorandum Opinion and Order if he can do so under Rule 11. Should Mr. Chaffin fail to file an amended complaint within 14 days of the entry of this Memorandum Opinion and Order, the Court will limit Count III to the public policy set forth in the FMLA only.

For the first time in their reply, Defendants set forth a separate argument that, if Mr. Chaffin was not an at-will employee, then the tort of retaliatory discharge must fail. The Court need not address issues raised for the first time in a reply. Nevertheless, there appears to be a question of fact as to whether Mr. Chaffin was an at-will employee, and Plaintiffs may plead causes of action in the alternative. *See Boudar v. E.G. & G., Inc.*, 106 N.M. 279, 283, 742 P.2d 491, 495 (1987) ("[W]e held that the tort of retaliatory discharge is unnecessary and inapplicable if an employee is protected from wrongful discharge by an employment contract. Neither case, however, prevents a complainant . . . from alleging and presenting evidence on a claim sounding in both tort and contract.").

Accordingly, the Court will not dismiss Plaintiffs' wrongful discharge claim as a matter of law as to Defendants BHPB MMCo, NMC, and Waggoner. For the reasons given *supra*, Plaintiffs have not alleged enough facts specific to Defendant Halgryn to state a plausible wrongful discharge claim against him. The Court, however, will give Plaintiffs an opportunity to amend their complaint. Should Plaintiffs fail to file an amended complaint within 14 days of the entry of this Memorandum Opinion and Order, the Court will dismiss Count III against Defendant Halgryn.

**IT IS THEREFORE ORDERED** that Defendants' *Motion to Dismiss for Failure to State a Claim* (**ECF No. 14**) is **GRANTED IN PART and DENIED IN PART** as follows.

1. Defendants' request to dismiss Mr. Chaffin's claim of common-law wrongful discharge (**Count III**) is **DENIED as to BHPB MMCo, NMC, and Waggoner** based on the policies of the FMLA. Plaintiffs may amend their complaint to add allegations regarding a theory of liability based on policies in the NMHRA and ADA within 14 days. **Failure to do so within 14 days will result in dismissal of any wrongful discharge claim based on the NMHRA and ADA.**

2. Defendants' request to dismiss Plaintiffs' intentional infliction of emotional distress claim (**Count IV**) is **DENIED as to BHPB MMCo, NMC, and Waggoner**.

3. Defendants' request to dismiss Plaintiffs' interference with contract and prospective economic advantage claim (**Count V**) is **GRANTED** to the extent it is based on tortious interference with Plaintiffs' health insurance contract, but is **DENIED** to the extent it is based on tortious interference with Mr. Chaffin's prospective employment contract or economic relations with the successor company **as to BHPB MMCo, NMC, and Waggoner**. Plaintiffs may amend their complaint within 14 days to add factual allegations relating to their claim for tortious interference with their employment contract with the BHP Group entities. **Failure to do so within 14 days will result in dismissal of that theory of liability.**

4. Plaintiffs may amend their complaint to add factual allegations regarding Defendant Halgryn as to Counts III, IV, and V. **Failure to do so within 14 days will result in dismissal of those enumerated claims against Defendant Halgryn.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**